### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIM. NO. 06-140** |
| | : | |
| **v.** | : | **CIV. A. NO. 12-85** |
| | : | |
| **RAYMOND MAINOR** | : | |

**STENGEL, J.**                                                                                       **April 24, 2014**

### MEMORANDUM

Raymond Mainor, a previously convicted felon, was convicted on October 24, 2007, on charges of distribution of, and possession with intent to distribute, cocaine and crack-cocaine, in violation of 21 U.S.C. § 841(a)(1); distribution of, and possession with intent to distribute, within 1,000 feet of a school, cocaine and crack-cocaine, in violation of 21 U.S.C. § 860(a); possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). On April 24, 2008, he was sentenced to total term of imprisonment of 300 months. Following an unsuccessful appeal, Mainor timely filed on January 9, 2012, a *pro se* § 2255 Motion ("*Pro se* Mot."), along with an Addendum explaining his claims ("*Pro se* Add."). Thereafter, we appointed counsel for Mainor, and counsel filed a Supplemental Motion ("Supp. Mot."). For the reasons that follow, I find that none of the issues presented have merit, and that the Motion should be denied in its entirety without an evidentiary hearing, and with no certificate of appealability issued.

## II.    FACTS[1]

On February 8, 2006, Judge Baylson authorized a warrant for electronic surveillance of Mainor's cell phone in furtherance of an investigation into his suspected drug trafficking.  Over the course of the following month, law enforcement personnel obtained substantial evidence corroborating their belief that Mainor was heavily involved in an organization engaged in trafficking cocaine and crack cocaine, and which operated out of his Philadelphia residence. Mainor's residence was located within 1,000 feet of a school.

On March 4, 2006, Mainor sold from his house 390 grams of cocaine to Abdul Rasheed, whose vehicle was subsequently stopped and searched by police.  Rasheed testified at trial that he purchased the cocaine from Mainor.  On March 8, 2006, Mainor's car was stopped by a local police officer shortly after he purchased fifteen kilograms of cocaine from Mark Walker at an intersection within 1,000 feet of a school.  The officer who pulled Mainor over detected a strong odor of cocaine from the car, and therefore asked Mainor to step out and be seated in his patrol car.  Fifteen or twenty minutes thereafter, a trained narcotics canine signaled the presence of drugs in the trunk of Mainor's car.  Mainor was arrested and his car towed.  Upon issuance of a search warrant, police officers found the fifteen kilograms of cocaine inside the trunk.

Meanwhile, though authorities were in the process of obtaining a search warrant for Mainor's residence, surveillance officers stationed there approached the house upon suspicion that material evidence would soon be destroyed.  The officers knocked on the front door and announced their presence; a man inside the house opened the door for a moment, but quickly slammed it shut.  Two men ran up the stairs in the house and, after breaking an upstairs window,

---

[1]  Unless otherwise noted, the facts are taken from the opinion of the United States Court of Appeals for the Third Circuit affirming Mainor's conviction and sentence.  See United States v. Mainor, 393 Fed. App'x 10 (3d Cir. 2010).

2

fled to another house via rooftop.  After entering and securing the house, the officers waited until

the search warrant was authorized.  Upon issuance of the warrant, the officers searched the house

and found a safe containing $28,375 in an upstairs bedroom, and an emptied safe cemented into

the basement floor.  They found in the kitchen a bag containing 1.006 kilograms of cocaine, a

bag containing 33.7 grams of cocaine, a bag containing 6.4 grams of crack-cocaine, various

paraphernalia containing cocaine and crack-cocaine residue, various substances (e.g., baking

soda, boric acid, Insotol, and Procaine) and appliances used for cutting cocaine and converting it

into crack-cocaine, and documents demonstrating that the house was Mainor's residence.  In a

second-floor bedroom closet, officers found a fully loaded and operable Bryco Arms 9

millimeter semiautomatic handgun, with one round loaded in the chamber; an electronic money

counter; an organizer containing telephone numbers and "tally sheets"; and a laptop computer

containing telephone numbers, tally sheets, and an image of piles of United States currency.  On

the nightstand next to the bed, they found documents (including a bank statement and a

municipal court notice) containing Mainor's name.

On March 9, 2006, the Government filed a complaint against Mainor charging him with

numerous drug and firearms offenses.  A grand jury returned an initial indictment on March 29,

2006, and a ten-count superseding indictment on December 6, 2006.  The superseding indictment

charged Mainor with:  distribution of, and possession with intent to distribute, cocaine and crack-

cocaine, in violation of 21 U.S.C. § 841(a)(1); distribution of, and possession with intent to

distribute, within 1,000 feet of a school, cocaine and crack-cocaine, in violation of 21 U.S.C. §

860(a); possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18

U.S.C. § 924(c); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. §

922(g)(1).  On December 12, 2006, the Government filed, pursuant to 21 U.S.C. § 851(a)(1), an

information stating that Mainor previously had been convicted of a felony controlled substance offense in the Court of Common Pleas of Philadelphia County.

Before trial, Mainor filed several motions, including: a motion to suppress evidence obtained from the search of his car; a motion and two supplemental motions to suppress evidence obtained from electronic and video surveillance; and two motions to dismiss the indictment for violations of the Speedy Trial Act. These motions were denied and trial commenced on October 17, 2007. The jury returned a guilty verdict on all counts, and Mainor was thereafter sentenced to 300 months of imprisonment, which represented the minimum statutory sentence available. He timely appealed his conviction and sentence.

On direct appeal, Mainor asserted error in the denying of his motion to suppress the evidence obtained from the wiretap, as well as his motion to suppress the evidence obtained from the search of his car. He also argued that the evidence presented at trial was insufficient to support the charges that (1) he personally possessed the drugs found in his house, and (2) the firearm was possessed in furtherance of a drug-trafficking crime. Finally, he argued: (1) that the superseding indictment should have been dismissed due to a violation of the Speedy Trial Act; and (2) that that there was plain error in the imposition of a mandatory 20 year sentence for his conviction under 21 U.S.C. § 841(a)(1)(A), because the Special Information filed under 21 U.S.C. § 851 (regarding Mainor's prior felony drug conviction) was not signed by a Government attorney.   On the wiretap issue, he argued (1) that the affidavit of Special Agent Gregory Yensan, which accompanied the warrant application submitted by an Assistant United States Attorney ("AUSA"), did not adequately demonstrate that an electronic wiretap was necessary, given the success of alternative investigative techniques; (2) that the warrant authorizing electronic surveillance of his cell phone was invalid because the AUSA's application seeking the

warrant inadvertently referenced an Authorization Order issued by the Attorney General ("AG") that had expired a year earlier; and (3) that the Government's interception of his electronic communications violated the "notice and inventory" provision of 18 U.S.C. § 2518(8)(d) because he did not receive the required notice within the time provided.  On the vehicle search issue, Mainor argued that the stop and subsequent search of his car, as well as his arrest, occurred without probable cause.  The United States Court of Appeals for the Third Circuit rejected all of these arguments, affirming the conviction and sentence.

In his *pro se* Motion pursuant to 28 U.S.C. § 2255, Mainor raises sixteen issues of trial counsel ineffectiveness:

1.  failure to object to the admission of two recorded phone calls between Mainor and Abdul Rasheed.

2.  failure to request jury instructions on certain lesser included offenses.

3.  failure to compel the Government to turn over material provided to the Attorney General.

4.  failure to compel the Government to turn over phone records used to support its wiretap application.

5.  failure to object to the verdict sheet.

6.  failure to object to the removal of Mark Walker's name in the superseding indictment.

7.  failure to challenge Counts 3, 4, and 6 of the superseding indictment charging "aiding and abetting" offenses because the Government failed to prove who Mainor was aiding and abetting.

8.      failure to object to the absence of the language "possession with intent to distribute" in Counts 9 and 10.

9.      failure to request the arrest report.

10.     failure to call the arresting officer at the suppression hearing to show that Mainor was illegally arrested.

11.     failure to challenge the order authorizing the wiretap.

12.     failure to object to the jury instruction given for Counts 1, 2, 3, 4, 5, and 6 because they did not instruct that five kilograms or more was an element of the offense charged.

13.     failure to inform Mainor that his co-defendant cooperated with the Government.

14.     failure to object to that portion of the jury instruction where the Court read the superseding indictment to the jury, because (1) the Court "never read the offense aided and abetted to the jury that was in Counts 1, 2, 3, 4, and 6"; (2) used the word "deliver" that was not contained in the superseding indictment; (3) used the word "heroin" even though there was no heroin involved in the case; and (4) did not mention the mention the weight element of each charge contained therein.

15.     failure to challenge false information contained in the wiretap affidavit.

16.     failure to challenge the Government's basis for seeking to postpone the notification requirement of 18 U.S.C. § 2518(d).

## III.    LEGAL STANDARD

"Motions pursuant to 28 U.S.C. § 2255 are the presumptive means by which federal prisoners can challenge their convictions or sentences that are allegedly in violation of the Constitution."  Okereke v. United States, 307 F.3d 117, 120 (3d Cir. 2002).  Section 2255

permits a prisoner sentenced by a federal court to move the court that imposed the sentence to "vacate, set aside, or correct the sentence" where: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack.  See 28 U.S.C. § 2255(a).

Section 2255(b) provides the procedure for reviewing the motion:

> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.  If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

28 U.S.C. § 2255(b).

The district court is given discretion in determining whether to hold an evidentiary hearing on a prisoner's motion under § 2255.  See Gov't of the Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989); see also, 28 U.S.C. §  2255, R. 8(a).  In exercising that discretion, the Court must decide whether the prisoner's claims, if proven, would entitle him to relief and then consider whether an evidentiary hearing is needed to determine the truth of the allegations.  See Gov't of the Virgin Islands v. Weatherwax, 20 F.3d 572, 574 (3d. Cir. 1994).  Accordingly, a district court may summarily dismiss a motion brought under § 2255 without a hearing where the "motion, files, and records, 'show conclusively that the movant is not entitled to relief.'"  United States v. Nahodil, 36 F.3d 323, 326 (3d Cir. 1994) (quoting United States v. Day, 969 F.2d 39, 41-42 (3d Cir. 1992)); see also Forte, 865 F.2d at 62.

III.    **ANALYSIS**

a.    The Strickland standard.

The two-part standard of Strickland v. Washington, 466 U.S. 668 (1984), "supplies the standard for addressing a claim of ineffective assistance of counsel."  United States v. Smack, 347 F.3d 533, 537 (3d Cir. 2003) (citing Strickland, 466 U.S. at 687, 104 S.Ct. 2052).  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  Strickland, 466 U.S. at 686, 104 S.Ct. 2052.  Under the two-part inquiry, "[f]irst, the defendant must show that counsel's performance was deficient," that is, "that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-88.  The measure for counsel's performance under the first prong of Strickland is "whether counsel's assistance was reasonable considering all the circumstances" including "prevailing professional norms."  Id.  "Second, the defendant must show that [counsel's] deficient performance prejudiced the defense."  Id. at 687.  The defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.

Under Strickland, defendants must establish both prongs of the standard for ineffective assistance of counsel, and an ineffective assistance of counsel claim will fail if either prong is not satisfied.  Further, Strickland advises courts to resolve such claims on the prejudice prong lest "ineffectiveness claims . . . become so burdensome to defense counsel that the entire criminal justice system suffers as a result."  Id. at 697 (stating that "there is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one. . . .  If it is easier to dispose of an ineffectiveness claim on

8

the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.")

       b.     The Claims[2]

          1.     Failure to object to the admission of recorded phone calls (*Pro se* Mot.); failure to request a limiting instruction and a final jury instruction concerning the wiretap evidence (Supp. Mot.).

Mainor argues that the wiretap evidence introduced by the Government was "outside the scope of the superseding indictment." (*Pro se* Add. at 1.)  He asserts that two phone conversations recorded on February 11, 2006, concerned "a crime that never took place."  Id. Specifically, he argues that in the recording, he and a cooperating witness Abdul Rasheed, talked about cooking cocaine and about a drug sale, but "no one was ever charged for an offense dated for February 11, 2006," and that they merely "spoke of a sale that never took place."  (Id. at 2.)

I find that trial counsel's failure to object to the introduction of the recorded conversations was not a violation of Strickland.  As appointed counsel notes in discussing the issue, while the conversations did not result in any specific charge in the superseding indictment,

---

[2]  After the *pro se* Motion was filed, we appointed counsel.  (Doc. No. 174.)  Counsel filed a Supplemental Motion in which he significantly narrowed the issues for review to two claims of trial counsel ineffectiveness:  (1) failure to request a limiting instruction and a final jury instruction concerning the wiretap evidence; and (2) failure to challenge the wiretap evidence on the ground that the application contained false information.  (See Supp. Mot, Doc. No. 189, at unnumbered pages 4, 11.)

    The Government argues that only the claims adopted by counsel in the Supplemental Motion have been properly preserved, asserting that criminal defendants have no right to "hybrid" representation when they are appointed counsel to represent them.  See McKaskle v. Wiggins, 465 U.S. 168, 183 (1984) (stating that there is no constitutional right to hybrid representation); United States v. D'Amario, 328 F. App'x 763, 764 (3d Cir. 2009) ("[A] district court is not obligated to consider pro se motions by represented litigants.").  For the sake of completeness and to eliminate any appellate issues, I will address all of Mainor's issues on the merits.

they were clearly relevant under Fed. R. Evid. 404(b)(1)[3] since they occurred shortly before the events encompassing the charged conduct, and were admissible to show (1) a *modus operandi* between Mainor and Rasheed, or (2) intent with regard to the cocaine later found in Mainor's vehicle and residence.  The Government argues that we need not even invoke Rule 404(b)(1) since the wiretap evidence was "intrinsic" to the crimes charged, and therefore, directly admissible.  It asserts that the evidence was intrinsic because it captured Mainor arranging the charged drug transactions.  I conclude that the evidence was intrinsic and directly admissible to prove the charged crimes.

"Rule 404(b) 'does not extend to evidence of acts which are "intrinsic" to the charged offense.'"  United States v. Cross, 308 F.3d 308, 320 (3d Cir. 2002) (quoting Fed. R. Evid. 404(b) advisory committee's note (citing United States v. Williams, 900 F.2d 823 (5th Cir.1990)));  United States v. Green, 617 F.3d 233, 245 (3d Cir. 2010) (stating that "Extrinsic evidence must be analyzed under Rule 404(b); intrinsic evidence need not be.")  The Third Circuit has identified "two narrow categories of evidence" that are intrinsic:  "First, evidence is intrinsic if it 'directly proves' the charged offense. . . .  This gives effect to Rule 404(b)'s applicability only to evidence of 'other crimes, wrongs, or acts.' . . .  If uncharged misconduct directly proves the charged offense, it is not evidence of some 'other' crime. . . .  Second, 'uncharged acts performed contemporaneously with the charged crime may be termed intrinsic if

---

[3]  The Rule provides:

(1)  Prohibited Uses.  Evidence of a crime wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2)  Permitted Uses; Notice in a Criminal Case.  This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Fed. R. Evid. 404(b)(1), (2).

they facilitate the commission of the charged crime.' . . . But all else must be analyzed under Rule 404(b)." Green, 617 F.3d at 248-49 (internal citations omitted).

Part of the charged conduct is that on or about March 4 and 8, 2006, Mainor engaged in several drug transactions. (Superseding Indictment, Counts 1, 2, 3, 4, 5, 6, 8, 9.) Rasheed testified at trial concerning the recorded phone calls he had with Mainor on February 11, 2006. (N.T. 10/22/07 at 13.) He identified the voices on the recorded phone call as himself and Mainor. (Id.) They discussed the "cooking" process to turn the cocaine into crack. (Id. at 14.) They also discussed prices. (Id. at 15.) In the second call, they discussed that Rasheed had a buyer for one and one-half kilos. (Id. at 16.) He met with Mainor on March 4, 2006, to make the drug transaction. (Id. at 19-22.) This evidence of preliminary discussions constituted, at the least, uncharged acts performed contemporaneously with the charged crime that facilitated the commission of the charged crime. Thus, this evidence of preliminary negotiations that culminated in the actual drug transaction was relevant and admissible as intrinsic evidence to prove the charged offenses.

Because the wiretap recordings were relevant and admissible intrinsic evidence, any objection raised by trial counsel to their admission would have been meritless. Counsel cannot be deemed to have violated professional norms by failing to raise a meritless objection. See Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir. 1994) (failure to raise non meritorious issues does not constitute ineffective assistance of counsel); Thomas v. United States, 951 F.2d 902, 904 (8th Cir. 1991) (defense counsel not ineffective for failing to raise meritless objections); Sweet v. Tennis, Civ. A. No. 07-5349, 2008 WL 4372851 (E.D. Pa. Aug. 18, 2008) (same). Accordingly, the claim of ineffective assistance of counsel for failing to object to the admission of the wiretap evidence is meritless.

Appointed counsel asserts in the Supplemental Motion that the Court should hold an evidentiary hearing on whether trial counsel was ineffective in failing to request a limiting instruction, both before the wiretap evidence was admitted and in the final jury charge.  (See Supp. Mot. at unnumbered page 4 (citing <u>Cross</u> 308 F.3d at 320-21 ("To satisfy Rule 404(b), evidence of other acts must (1) have a proper evidentiary purpose, (2) be relevant under Rule 402, (3) satisfy Rule 403 (i.e., not be substantially more prejudicial than probative), and (4) be accompanied by a limiting instruction, when requested pursuant to Federal Rule of Evidence 105, that instructs the jury not to use the evidence for an improper purpose.") (internal footnote omitted)).  Because I conclude that the wiretap evidence was admissible as intrinsic evidence of the crimes charged in Counts 9 and 10 without recourse to Rule 404(b), there is no basis for convening an evidentiary hearing on trial counsel's reasons for failing to request a Rule 404(b) limiting instruction.

2.        Failure to request jury instructions on lesser included offenses.

Mainor argues *pro se* that trial counsel was ineffective for failing to request an instruction on lesser included offenses under 21 U.S.C. § 860 because Counts 1, 3, and 5 charged crimes under 21 U.S.C. § 841(a)(1).  He argues that "the Third Circuit Court of Appeals stated that 21 U.S.C. § 841(a)(1) is a lesser included offense of 21 U.S.C. § 860(a)."  (*Pro se* Add. at 3.)  On that basis, he argues that counsel was ineffective for failing to request a lesser included offense instruction on these charges.  This argument is meritless.

Section 860(a) creates a separate drug trafficking offense if any person violates 21 U.S.C. § 841(a)(1) within one thousand feet of a school, playgrounds or public housing facility.  On each count charging a violation of Section 860(a), Mainor was separately charged for violating Section 841(a)(1).  (<u>Compare</u> Superseding Indictment Counts 1, 3, 5 with Counts 2, 4, 6.)

12

Mainor was convicted on both sets of charges; i.e. the jury concluded from the evidence that the drug trafficking offenses occurred, and that they occurred within one thousand feet of a restricted location.  However, it is clear from the record that no constitutional error occurred.

The Third Circuit has held that Section 841(a)(1) is a lesser included offense of Section 860(a).  United States v. Jackson, 443 F.3d 293, 301 (3d Cir. 2006) (stating "we agree that the possession of cocaine base with intent to distribute under 21 U.S.C. § 841(a)(1) is a lesser-included offense of possession with intent to distribute within 1,000 feet of a school under 21 U.S.C. § 860(a).").   However, a constitutional double jeopardy error only occurs when a defendant is *sentenced* for violating both Section 841(a)(1) and Section 860(a) on facts arising from the same incident.  Id. (stating that "in sentencing Jackson for violating both § 841(a)(1) and § 860(a) on facts arising from the same incident, the Court committed plain error").  The record here clearly reflects that Mainor was sentenced only on Counts 2, 4 and 6, and did not receive an additional sentence on Counts 1, 3, and 5.  (See N.T. 4/24/2008 at 34 (sentencing Mainor to the statutory mandatory minimum of "240 months on each of Counts 2, 4, 6, and 10, and a term of 120 months on Count 8 to be served concurrently with a consecutive term of 60 months on Count 7, the use of a firearm in the furtherance of a drug trafficking offense.  The defendant is to be imprisoned, therefore, for a total term of 300 months.")  Because Mainor was convicted on both the greater and the lesser charge, but the convictions were merged for purposes of sentencing, he suffered no double jeopardy consequence.  Accordingly, I find he can make no meritorious claim that the failure to request a lesser included offense instruction constituted ineffective assistance of counsel since he cannot show the prejudice prong of Strickland.

13

3.    Failure to compel the Government to turn over material provided
to the Attorney General.

In Claim 3, Mainor argues that trial counsel was ineffective for failing to file a motion to
compel the Government to turn over documents the AUSA allegedly sent to the Department of
Justice to secure authorization to seek approval from the Court for the wiretap.  He asserts that
the AUSA "had to send something to the Department of Justice to support her facts to obtain a
wiretap application."  (*Pro Se* Add. at 3.)  He asserts further that he sent a letter to trial counsel
asking that counsel ask for this information; that counsel sent a letter to the AUSA requesting the
information; and that the AUSA never disclosed the information.  (Id. at 3-4.)  He asserts that if
counsel had filed a motion to compel production, the "information that [Mainor] asked his
attorney to request would have demonstrated to the Court that the A.U.S.A. never sent anything
to the Department of Justice to request a wiretap application."  (Id. at 4.)  In his Supplemental
Motion, appointed counsel refused to assert this claim, informing the Court that the "claim
appears based solely on conjecture without any supporting facts included in defendant's petition
[sic].  Moreover, defendant does not site [sic] any provision of Title III of the Omnibus Crime
Control and Safe Streets Act that was supposedly violated.  Even assuming arguendo that some
error of procedure occurred, defendant sites [sic] no decisional law or rule that makes clear he
would have been entitled to relief at a suppression hearing."  (Supp. Mot. at unnumbered page 5.)

Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III"), 18
U.S.C. §§ 2510-20, broadly prohibits wiretaps "[e]xcept as otherwise specifically provided in
this chapter."  18 U.S.C. § 2511(1).  It mandates detailed procedures that law enforcement
officials must follow in applying for a wiretap order, see 18 U.S.C. §§ 2516, 2518(1), and
specific findings that a judge must make in issuing a wiretap order, see 18 U.S.C. § 2518(3).  It

14

also specifies in detail the substantive provisions of the wiretap approval order, see 18 U.S.C. §
2518(4), and it limits the duration of the order and any extension order, see 18 U.S.C. § 2518(5).
Finally, the statute prohibits the use of wiretap evidence in any trial "if the disclosure of that
information would be in violation of this chapter." See 18 U.S.C. § 2515.

Section 2516(1) provides that the AG or his designate "may authorize an application to a
Federal judge of competent jurisdiction for, and such judge may grant in conformity with section
2518 of this chapter an order authorizing or approving the interception of wire or oral
communications. . . ." 18 U.S.C. § 2516(1).[4] Section 2518(10)(a) defines the disclosures
prohibited by § 2515 and the standards for suppressing wiretap evidence. Specifically, Section
2518(10)(a) provides that, upon the filing of a motion to suppress wiretap evidence, the trial
judge "may in his discretion make available to the aggrieved person or his counsel for inspection
such portions of the intercepted communication or evidence derived therefrom as the judge
determines to be in the interests of justice." 18 U.S.C. § 2518(10)(a).

In his *pro se* Motion, Mainor does not assert ineffective assistance of counsel arising
from the failure to seek the intercepted communications or the information the AUSA provided
to the Court to support the wiretap request. Rather he alleges ineffective assistance of counsel
from the failure to seek the information allegedly presented to the AG's designate by the AUSA

---

[4] I note that the issue of whether the approval of the AG's designate was proper was an
issue raised by Mainor in his pretrial suppression motion. He argued there that the wiretap
evidence was due to be suppressed because the Attorney General's Order specified in the
application to the Court, pursuant to which the official of the Criminal Division of the Justice
Department was authorized to grant approval to make wiretap applications, expired prior to the
date of the wiretap application. (See Doc. No. 93 at 4.) Judge Baylson rejected this argument. It
was undisputed that a valid Attorney General Order did, in fact, exist at the time the
authorization for a wiretap application was submitted to the Court, and the Government
submitted the valid order at the time the wiretap application was filed with the Court. (Id.)
Because the authorization was actually signed by the statutorily acceptable official, Judge
Baylson found that the misidentified Attorney General Order number was harmless. (Id. at 5.)
This finding was affirmed on appeal. See Mainor, 393 F. App'x at 14-15.

to support her request that the AG authorize her attempt to seek the wiretap order from the Court. I find that appointed counsel is correct that the *pro se* Motion fails to sufficiently allege ineffective assistance of counsel since Mainor does not assert an arguable basis that Title III was violated.

First, Mainor's assertion that the AUSA "had to send something" to Washington, does not establish that counsel was ineffective for failing to obtain it.  The assertion that the AUSA "never sent anything to the Department of Justice to request a wiretap application" is mere conjecture without any supporting facts.  (So too is the assumption that the "something" submitted by the AUSA to the AG was different from the material the AUSA then submitted to the court to support the request for the wiretap.)  Second, Mainor does not contend that the "something" contained in the application was somehow exculpatory, thereby triggering a duty to disclose the material.  Third, Mainor cites to no provision in Title III requiring the disclosure of the information the AUSA used to seek the AG's authorization.  Title III provides only that the defendant is entitled to the "intercepted communication or evidence derived therefrom."  Mainor makes no assertion that the Government failed to provide that evidence or that counsel failed to assert his rights to that evidence.  Finally, there is also no assertion that the AUSA failed to secure the required authorization before seeking the wiretap order.  Accordingly, I find that Mainor has not stated a meritorious claim on either <u>Strickland</u> prong.

4. Failure to request recorded phone conversation cited in wiretap affidavit.

In Claim 4, Mainor argues that counsel failed to request the recorded phone conversation that Agent Yensan cited in the affidavit he filed in support of the application for the wiretap. Other than identifying the dates on which phone conversations were recorded, Mainor states no

facts or legal argument to support his contention that the failure to request them was ineffective assistance of counsel. Appointed counsel refused to include this claim in the Supplemental Motion because Mainor did not state why his trial counsel was ineffective or state how he was prejudiced by counsel's failure. I agree that the *pro se* Motion fails to make a facial claim of ineffectiveness on this ground.

The issue of whether the wiretap evidence was due to be suppressed was thoroughly litigated by trial counsel. He raised numerous issues regarding the Government's compliance with Title III, including an Omnibus motion attacking the investigative techniques (Doc. No. 26); and Supplemental Motions addressing whether the Government properly provided the inventory required by 18 U.S.C. § 2518(8)(d), and whether the appropriate designate of the AG authorized the application. (Doc. Nos. 66, 72). Because Mainor makes no meritorious argument that there was any additional suppression issue that counsel could have successfully raised based on the recordings, I find that this ineffective assistance of counsel claim fails both <u>Strickland</u> prongs.

5.      Failure to object to the verdict sheet.

Mainor next claims that trial counsel was ineffective because he failed to object to the verdict sheet, which "was missing one of the elements in 21 U.S.C. § 841(a)(1) and that element was a controlled substance." (*Pro se* Add. at 5.) Presumably, he contends that the verdict sheet should have made clear that the Government had to prove that cocaine and cocaine base are "controlled substances" or that it was error for the Court to instruct the jury as a matter of law that cocaine and cocaine base are controlled substances. (<u>See</u> N.T. 10/23/2007 at 72 (instructing the jury that "as a matter of law cocaine and cocaine base are controlled substances").) I find that any such objection would have been meritless if raised; accordingly, counsel cannot be deemed ineffective for failing to raise it.

17

An instruction that informs the jury of the elements of the crime of possession with intent to distribute a controlled substance requiring that the jury find that there must be a controlled substance, while also instructing that cocaine and cocaine base are controlled substances as a matter of law, has been found not to be erroneous.  See, e.g., United States v. Wadley, 185 Fed. App'x 137, 143 (3d Cir. 2006) (stating that, contrary to defendant's assertion, instruction that cocaine base was a controlled substance as a matter of law "did not direct a verdict with respect to whether [defendant] possessed cocaine base.  Rather, viewing all of the instructions in context, the District Court properly instructed the jury that it would first have to find that Wadley possessed cocaine base, and then would further have to find that Wadley possessed the cocaine base with the intent to distribute it."); United States v. Adames, 59 Fed. App'x 442, 446 n.7 (3d Cir. 2003) (holding that instruction that "cocaine hydrochloride is a controlled substance. It is solely for you, however, to determine whether or not the government has proved beyond a reasonable doubt that these defendants . . . conspired to possess with intent to distribute a substance which was cocaine hydrochloride," was not erroneous).  Also, the instruction that cocaine and cocaine base are controlled substances as a matter of law, is substantially similar to the Third Circuit's Model Jury Instruction 6.21.841-3.  ("You are instructed that, as a matter of law, (identity of controlled substance alleged in the indictment) is a controlled substance, that is, some kind of prohibited drug.")  Any objection to this instruction or the verdict sheet would thus have been meritless, vitiating any assertion that the failure to object violated Strickland.

> 6.    Failure to object to the removal of Mark Walker's name in the superseding indictment.

Mainor next asserts a claim of ineffective assistance of counsel for failing to object to the removal of codefendant Mark Walker's name from Counts One and Two in the copy of the

superseding indictment given to the jury.  Counts One and Two charged that Mainor and Walker knowingly and intentionally possessed with intent to distribute and aided and abetted the possession with intent to distribute cocaine, and that this activity occurred within one thousand feet of a school.  Prior to trial, Mark Walker entered a guilty plea.  Because Walker was no longer involved in the trial, prior to instructing the jury we asked defense counsel, "Does the defense want Mr. Walker's name redacted from the superceding [sic] indictment entirely? . . . Mr. Lacheen:  It may be removed, Your Honor, along with the counts that are not applicable for consideration by the jury at this time."  (N.T. 10/22/07 at 124.)  Mainor asserts that the removal "removed an offense from the superseding indictment.  The offense they removed was the aiding and abetting offense because Mark Walker was part of the offense the jury [sic] had to prove beyond a reasonable doubt."  (*Pro se* Add. at 5.)

I find that any ineffective assistance of counsel claim based on the failure to object is meritless because Mainor cannot demonstrate the prejudice prong of Strickland.  The Government proved at trial that on March 8, 2006, Mainor's car was stopped by police after he had purchased fifteen kilos of cocaine from Walker at a location within one thousand feet of a school.  Upon issuance of a search warrant, the fifteen kilos were found in the trunk of his car.  Thus, there was sufficient evidence to convict Mainor on direct possession with intent to distribute within one thousand feet of a school as charged in the superseding indictment, without the need to reference aiding and abetting.  Given this evidence, Mainor cannot demonstrate that counsel's failure to object to, or his acquiescence in, removing Walker's name created any prejudice.

7.      Failure to challenge Counts 3, 4, and 6 of the superseding indictment charging "aiding and abetting" offenses because Mainor was the only person charged in those counts.

Count 3 charged possession with intent to distribute, and aiding and abetting possession with intent to distribute, 1.04 kilos of cocaine on or about March 8, 2006; Count 4 charged that this possession with intent to distribute occurred within one thousand feet of a school. Count 6 charged a separate possession with intent to distribute, and aiding and abetting possession with intent to distribute, 6.4 grams of cocaine base. Mainor argues that counsel was ineffective for not seeking to strike the "aiding and abetting" language from these counts because "Defendant is the only one charged in Counts 3, 4 and 6. There is no one to aid and abet in those counts, so there is no way the jury could have convicted Defendant on those counts." I find that this claim fails for the same reason as Claim 6; because there was sufficient evidence to convict Mainor on the direct charges of possession with intent to distribute, without reference to aiding and abetting, he cannot demonstrate that counsel's failure to move to strike the "aiding and abetting" language created any prejudice.

As detailed above, on March 8, 2006, a warrant search of the car in which Mainor was stopped resulted in the discovery of fifteen kilograms of cocaine inside the trunk. A warrant search of his home resulted in the discovery of a bag containing 1.006 kilograms of cocaine, a bag containing 33.7 grams of cocaine, and a bag containing 6.4 grams of cocaine base, along with personal items nearby establishing his dominion over the areas where the drugs were found. This evidence was sufficient to prove Counts 3, 4, and 6 directly, without the need for additional evidence of aiding and abetting. Accordingly, Mainor cannot demonstrate prejudice arising from the failure to move to strike that language.

20

8.      Failure to object to the absence of the language "possession with
intent to distribute" in Counts 9 and 10.

Mainor next asserts an ineffective assistance of counsel claim based on counsel's failure to object "when Counts 9 and 10 were the [sic] missing elements of the offense.  Possession with intent to distribute was not in the language of the superseding indictment in Counts 9 and 10. Possession with intent to distribute is an element of 21 U.S.C. §  841(a)(1) that is mandatory and it is not in Counts 9 and 10." (*Pro se* Add. at 5.)  Mainor is correct that Counts 9 and 10 do not charge possession with intent to distribute;  rather each count charges that he, on or about March 4, 2006, "distributed a mixture and substance containing a detectable amount of cocaine." (Superseding Indictment at 10-11.)  His assertion that counsel was ineffective for failing to object to "missing elements," however, is meritless.

Section 841(a)(1) and Section 860 make it illegal to *both* "distribute" and "possess with intent to . . . distribute" a controlled substance.  21 U.S.C. §§ 841(a)(1), 860(a).  Mainor was charged with the actual delivering of controlled substances in these counts; thus there was no need to charge the possession with intent to distribute aspect of Sections 841(a)(1) and 860(a). The Government proved these charges through the testimony of Abdul Rasheed that Mainor sold him 390 grams of cocaine on that date at a location within one thousand feet of a school. Accordingly, any claim that counsel failed to object to the absence of the possession with intent to distribute language in Counts 9 and 10 fails both prongs of <u>Strickland</u>.

9.      Failure to request the arrest report.

Mainor next asserts an ineffective assistance of counsel claim based on counsel's failure to request the arrest report.  In so doing, he makes alternative assertions that "[t]here was not an arrest report done by Soto and Chabot.  If there was an arrest report by Officer Soto and Chabot

the Government never turned it over, manifesting injustice by withholding evidence." (*Pro se* Add. at 6.)  I find this claim is meritless.  If there was no arrest report, counsel could not have been ineffective for failing to obtain something that didn't exist.  Mainor's assertion that there may have been a report is unsupported speculation.  In either event, Mainor provides no basis to support the prejudice prong of <u>Strickland</u>.

> 10.  Failure to call the arresting officer at the suppression hearing to show that Mainor was illegally arrested.

Mainor argues that counsel was ineffective because he failed to call the arresting officer at the suppression hearing to show that his arrest was illegal.  He avers that Officer Soto testified at trial that "Defendant was arrested about ten (10) minutes into the initial traffic stop.  The K-9 dog did not arrive at the scene of the traffic stop until about twenty (20) minutes after the initial stop.  It plainly shows the arrest occurred before the dog arrived at the scene.  Defendant should not have been arrested until there was probable cause." (*Pro se* Add. at 6.)  I find that the assertion that counsel was ineffective for failing to call Officer Soto to raise this evidence at the suppression hearing is meritless.

The Government's evidence was that Officer Soto detained Mainor by placing him in the back seat of his police car after witnessing him engage in a drug transaction, and after detecting a strong odor of cocaine coming from Mainor's car.  An officer's detection of the odor of drugs in a car is sufficient to provide probable cause.  <u>See</u> <u>United States v. Ramos</u>, 443 F.3d 304, 308 (3d Cir. 2006) (quoting <u>United States v. Humphries</u>, 372 F.3d 653, 658 (4th Cir. 2004) (the odor of "marijuana alone, if articulable and particularized, may establish . . . probable cause" for officers to believe that contraband is present in the area from which the scent emanates); <u>see also</u> <u>United States v. Johns</u>, 469 U.S. 478, 482 (1985) (holding that officers who detected the smell of

22

marijuana within automobiles had probable cause to believe they contained contraband); United States v. Simmons, No. 06-3902, 2007 WL 3122169, at *3 (3d Cir. 2007) (reiterating that odor of drugs alone provides probable cause to search an automobile in the context of a traffic stop). If the source of the odor is a vehicle, police may search the vehicle without a warrant pursuant to the automobile exception to the warrant requirement.  See Maryland v. Dyson, 527 U.S. 465, 467 (1999) (stating that police may search the entirety of a vehicle without a warrant if probable cause exists to believe it contains contraband); United States v. Burton, 288 F.3d 91, 100 (3d Cir. 2002) ("The automobile exception to the warrant requirement permits law enforcement to seize and search an automobile without a warrant if 'probable cause exists to believe it contains contraband.'" (citation omitted)).

Here, the police took the additional steps of calling in a drug sniffing dog who alerted to the presence of drugs, and then getting a search warrant before searching the vehicle. Accordingly, I find that any assertion that counsel was ineffective for failing to call Officer Soto at the suppression hearing to challenge the legality of the arrest and search would have been futile; thus the ineffective assistance of counsel claim fails both prongs of Strickland.

11.     Failure to challenge the order authorizing the wiretap.

Next, Mainor asserts that counsel was ineffective because he failed to challenge the order authorizing the wiretap.  While he does not specifically identify what action or inaction counsel took, he states that Judge Baylson erred in identifying the AUSA "as the authorizing officer in his order."  (Pro se Add. at 6-7.)  I assume that the ineffective assistance of counsel claim arises from counsel's failure to raise an objection that Judge Baylson was required to identify the AG's designate that authorized the AUSA to seek the wiretap order.  Because Mainor does not

establish any judicial error, there can be no ineffective assistance of counsel claim arising from the failure to raise that error.

Under 18 U.S.C. § 2518(4), an order authorizing a wiretap must specify the identity of the person whose communications are to be intercepted (if known), the nature and location of the communications facilities as to which interception is granted, the identity of the agency authorized to intercept the communications, and the period of time during which the interception is authorized.  See 18 U.S.C. § 2518(4).  There is no requirement that the order identify the Attorney General's designate that authorized the AUSA to seek the wiretap order.  As noted, Judge Baylson found that the wiretap request was properly authorized by the AG's designate (see Doc. No. 93 at 3), and this finding was affirmed on appeal.  Mainor, 393 F. App'x at 14-15. Since Mainor does not assert that the information required by Section 2518(4) was not included in the wiretap order, and the AUSA's wiretap request was properly authorized, there can be no ineffective assistance of counsel claim based on the failure to object to Judge Baylson's order.

> 12.   Failure to object to the jury instruction given for Counts 1, 2, 3, 4, 5, and 6 because they did not instruct that a specific drug quantity was an element of the offense charged.

Mainor asserts that counsel was ineffective for failing to raise that the jury was not instructed that the specific drug quantities mentioned in the superseding indictment were elements of the charged offenses.  I find that, because the jury charge correctly instructed the jury that, if it found Mainor was guilty of possession with intent to distribute, it must proceed to the second step and find that the Government proved the specific drug quantity beyond a reasonable doubt, there was no instructional error.  Accordingly, there can be no ineffective assistance of counsel claim based on a failure to object to the instructions.

Counts One and Two charged possession with intent to distribute five kilos or more of cocaine; Counts Three and Four charged possession with intent to distribute 500 grams or more of cocaine; and Counts Five and Six charged possession with intent to distribute five grams or more of cocaine base.  After instructing the jury on the elements of the crime of possession with intent to distribute (see N.T. 10/27/2007 at 73 (charging that the elements are a controlled substance, possessed by the defendant with intent to distribute, with knowledge or intent), the jury was instructed as follows on the issue of drug quantity:

> The issue of drug quantity arises only as a secondary question in the event that you find the defendant guilty of Count 1, Count 2, Count 3, Count 4, Count 5 or Count 6.  If you find the defendant guilty of any of these drug counts, then you must respond to a question in this verdict sheet which is called a jury interrogatory to decide whether the crime involved certain quantities of cocaine or cocaine base, which are referred to in the criminal statute.  So, in other words there are two steps, and this is clearly laid on the verdict sheet for your consideration, in Counts 1 through 6, you must first determine whether the defendant is guilty or [sic] either distribution or of possession with intent to distribute a mixture and substance containing a detectable amount of cocaine or cocaine base.  For each count, only after you have reached and only if your verdict is guilty, do you proceed to the second step and answer the interrogatory on drug quantity. . . .  In order to decide that the count involved a certain quantity of drugs, you must be satisfied that the Government has proven that quantity by proof beyond a reasonable doubt.

(N.T. 10/23/2007 at 79-80 (internal paragraph breaks omitted).)

21 U.S.C. § 841(a)(1) and § 860 do not require the Government to prove beyond a reasonable doubt that defendant distributed a specific quantity of drugs.  United States v. Stewart, 179 F. App'x 814, 819 (3d Cir. 2006) ("Those offenses [21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846] do not require proof of a particular drug quantity to sustain a conviction."); United States v. Gibbs, Crim. No. 81-260, 1986 WL 6309, at *3 (E.D. Pa. 1986) ("Section 841(a)(1) is entitled the 'unlawful acts' section of 21 U.S.C. § 841 and proscribes certain conduct relating to controlled substances.  That section is wholly separate from 21 U.S.C. § 841(b), entitled the 'penalties' provision, which enumerates, for sentencing purposes, specific considerations to be

given to the type and quantity of the substance .").  Drug quantity is primarily relevant under the "Penalties" section in 21 U.S.C. § 841(b), under which the court determines the proper sentence to apply after a defendant is convicted under § 841(a)(1).  <u>Gibbs</u> at *3.  To support an enhanced sentence, drug quantity must be pled and proved beyond a reasonable doubt.  <u>See</u> <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 490 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury . . . .");  <u>United States v. Prince</u>, No. 07-4408, 2009 WL 1395470, at *3 (3d Cir. May 20, 2009) ("For sentencing purposes, drug quantity is considered relevant conduct determinable by the sentencing court.").  Thus, for sentencing purposes, the Government had to prove beyond a reasonable doubt the quantity of cocaine or cocaine base Mainor intended to distribute.  <u>United States v. Barbosa</u>, 271 F.3d 438, 452-53 (3d Cir. 2001).

The two-step instruction given here has been approved by the Third Circuit.  <u>See, e.g.</u>, <u>United States v. Lee</u>, 339 Fed. App'x 153, 162 (3d Cir. 2009).  It is also substantially similar to the Third Circuit Model Jury Instructions on possession with intent to distribute offenses, specifically Instruction 6.21.841C, which provides for the two-step procedure.  Because the jury was properly charged on the elements of possession with intent to distribute, and that, if the jury found Mainor guilty, it had to find the drug quantity beyond a reasonable doubt, there was no meritorious instructional error for counsel to raise.  Accordingly, Mainor cannot show either <u>Strickland</u> prong from the failure to raise an objection.

13.    Failure to inform Mainor that his codefendant cooperated with the Government.

Mainor asserts that he did not discover that his codefendant Mark Walker was cooperating with the Government until the time of his sentencing, when it was mentioned by the

Court.  He asserts that the Government never gave the defense a copy of Walker's plea agreement or his proffer with the Government.  Notably, Mainor does not assert that counsel was ineffective for failing to obtain the plea agreement or proffer; only that he was ineffective for failing to tell Mainor that Walker had cooperated.  Even accepting Mainor's assertions as true, I find that he cannot demonstrate the prejudice prong of <u>Strickland</u>.

First, Mainor does not even attempt to show how counsel's alleged action prejudiced him.  Given that the evidence adduced by the Government at trial was overwhelming, I find that he cannot make this showing.  The Government's case included wiretap evidence corroborating law enforcement's belief that Mainor was heavily involved in an organization engaged in trafficking cocaine and crack cocaine, and which operated out of his Philadelphia residence within 1,000 feet of a school; evidence of visual surveillance, during which authorities witnessed Mainor selling cocaine to Abdul Rasheed, whose vehicle was subsequently stopped and searched by police; Rasheed's testimony that he purchased the cocaine from Mainor; the evidence obtained from Mainor's car shortly after he was observed purchasing fifteen kilograms of cocaine from Mark Walker at an intersection within 1,000 feet of a school; and the evidence obtained from Mainor's residence.  Because Mainor does not explain how counsel's alleged failure to inform him about Walker's guilty plea caused him prejudice, I find that the quality and quantum of evidence presented by the Government discounts any possibility that Mainor can establish the second <u>Strickland</u> prong.  Accordingly, I find that he has failed to even make a threshold showing sufficient to warrant an evidentiary hearing on this issue.

              14.     Failure to object to that portion of the jury instruction where the Court read the superseding indictment to the jury, because (1) the Court "never read the offense aided and abetted to the jury that was

in Counts 1, 2, 3, 4, and 6"; (2) used the word "deliver" that was not contained in the superseding indictment; (3) used the word "heroin" even though there was no heroin involved in the case; and (4) did not mention weight element of each charge contained therein.

In Claim 7, Mainor asserted that counsel failed to challenge Counts 3, 4, and 6 of the superseding indictment charging "aiding and abetting" offenses because the Government failed to prove who Mainor was aiding and abetting.  Here, he claims counsel erred in failing to object to that portion of the jury instruction where the Court read the superseding indictment to the jury, because "[w]hen the Judge read the superseding indictment to the jury he never read the offense aided and abetted to the jury that was in Counts 1, 2, 3, 4, and 6."  (*Pro se* Add. at 9.)  This assertion ignores the fact that the jury was instructed on how a defendant aids and abets a crime perpetrated by another:

> A person may violate the law event though he or she does not personally do each and every act constituting the offense is [sic] that person aided and abetted the commission of the offense.

> Before a person may be held responsible for aiding and abetting others in the commission of a crime, it is necessary that the Government prove beyond a reasonable doubt that the defendant knowingly and deliberately associated himself in some way with the crime charged and participated in it with the intent to commit the crime.

> In order to be found guilty of aiding and abetting the commission of the crime charged in the superceding [sic] indictment, the Government must prove beyond a reasonable doubt that the defendant one, knew that the crime charged was to be committed or was being committed; two, knowingly did some act for the purpose of aiding and abetting the commission of that crime; and, three, acted with the intention of causing the crime charged to be committed.

> Before a defendant may be found guilty as an aider or an abettor to the crime, the Government must also prove beyond a reasonable doubt that someone committed each of the elements of the offenses charged as detailed for you in these instructions.

> Merely being present at the scene of the crime or merely knowing that a crime is being committed or is about to be committed is not sufficient conduct for the jury to find that a defendant aided and abetted in the commission of the crime.

(N.T. 10/23/07 at 77-78.)  This instruction on aiding and abetting is substantially similar to the Third Circuit Model Instruction on aiding and abetting.  See Third Circuit Model Jury Instruction 7.02.  Because the superseding indictment's allegation of aiding and abetting liability was proper, the instructions fully informed the jury of the elements the Government was required to prove to establish culpability under an aiding and abetting theory, and the evidence was overwhelming that Mainor was a direct participant, as well as an aider and abettor of his codefendant, I find that counsel cannot be deemed ineffective for failing to object to the Court's reading the aiding and abetting language of the superseding indictment to the jury.

The failure to object to the use in the charge of the word "deliver" was also not ineffective assistance.  In recounting the contents of the superseding indictment, the jury was told that "In Count 6 he is charged with possession with intent to deliver approximately 6.4 grams of crack cocaine within 1,000 feet of a school."  The superseding indictment actually used the word "distribute," not "deliver."  I used the word "distribute" in recounting all of the other counts.  Mainor contends that the failure to object to the one use of the word "deliver" was ineffective assistance.  I find this part of the claim is also meritless.

The Supreme Court has stated that "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation.  The question is 'whether the ailing instruction . . . so infected the entire trial that the resulting conviction violates due process.'"  Middleton v. McNeil, 541 U.S. 433, 437 (2004) (quoting Estelle v. McGuire, 502 U.S. 62, 72 (1991)).  Further, a single instruction "'may not be judged in artificial isolation, but must be viewed in the context of the overall charge.'"  Id. (quoting Boyde v. California, 494 U.S. 370, 378 (1990)).  Because I fully defined the elements of the possession with intent to distribute

crime, including that the "[t]he term distribute means to deliver a controlled substance," (see N.T. 10/23/07 at 74), and this definition is substantially similar to Third Circuit Model Instruction 6.21.841-2 (stating "Distribute (to distribute), as used in the offenses charged, means (deliver or transfer) (to deliver or to transfer) possession"), counsel's failure to object to the single use of the word "deliver" cannot be considered "deficient performance" under Strickland, nor was it prejudicial.

For the same reason, I find that counsel's failure to object to the inadvertent use of the word "heroin" instead of cocaine, was also not deficient performance.  In discussing the issue of drug quantity, the jury was instructed that,

> You may notice, for example, that Count 1 alleges that the defendant possession with intent to distribute in excess of five kilograms of a mixture and substance containing a detectible amount of heroin.  I instruct you that in order to find the defendant guilty of Count 1 or any of these counts, you need not find that any particular quantity of heroin was the object of the offense.  In order to find the defendant guilty of an of these drug counts, you need only find that be possession with intent to distribute a measurable amount of a mixture and substance containing a detectible amount of heroin.

(N.T. 10/23/07 at 78-79.)  Given the entirety of the trial testimony that Mainor had engaged in the sale of cocaine and cocaine base, and the numerous times that the jury was properly instructed that the offenses involved cocaine and cocaine base, I find that the failure to object to this inadvertence was not deficient performance, nor did it prejudice the defense.

Finally, Mainor's assertion that the failure to object to the fact that the Court did not mention the weight element of each charge is also meritless.  As discussed above in Claim 12, after instructing the jury on the elements of the crime of possession with intent to distribute, the jury was separately instructed on the issue of drug quantity.  Because this instruction fully and fairly advised the jury of the drug quantity issue, there can be no assertion that the failure to object was deficient performance or caused prejudice.

15.     Failure to challenge false information contained in the wiretap
affidavit.

Mainor asserts that counsel was ineffective for failing to challenge allegedly false factual assertions contained in the affidavit signed by Agent Yensan to support the Government wiretap application.[5]  Appointed counsel notes that Mainor's assertions, even if proven, would not have met the criteria contained in 18 U.S.C. § 2518(10)(a) to suppress the contents of a wiretap. Nonetheless, appointed counsel asserts that trial counsel could also have challenged the Government's alleged presentation of false information to secure the wiretap order on constitutional grounds.  (Supp. Mot. at unnumbered page 11 (citing Franks v. Delaware, 438 U.S. 154 (1978)).)  While noting also that Mainor has not indicated what actions prior counsel should have taken to prove his claim, appointed counsel seeks an evidentiary hearing "to determine if defendant can show that his prior counsel could have proven the warrant contained false information." (Id.)  I find that neither Mainor nor appointed counsel have met the threshold for convening an evidentiary hearing.  I further find that appointed counsel is correct in his conclusion that Mainor's assertions, even if proven, would not have met the criteria contained in 18 U.S.C. § 2518(10)(a) to suppress the contents of a wiretap.  Given this concession, any claim that trial counsel was ineffective cannot succeed since Mainor cannot demonstrate Strickland's prejudice prong.

––––––––––––––––––––

[5]  Although Mainor lists twelve factual assertions, his list includes duplications.  The assertions are: (1) he used the alias "Melvin Holmes"; (2) he was involved in laundering monetary instruments; (3) he engaged in monetary transactions in property derived from specified unlawful activity; (4) he engaged in a drug conspiracy and used a communications facility in a drug transaction; (5) he was the head of a drug organization; (6) he had conversations with Michael Burton; (7) there were 189 arrests, seizure of $7 million and 2,107 kilograms of cocaine; (8) Mainor provided $96,000 to pay for a drug shipment; and (9) Burton discussed details of that shipment with the Government's confidential source.  (Pro se Add. at 10-11.)

Under the wiretap statute, an "aggrieved person" may "move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived therefrom, on the grounds that -- (i) the communication was unlawfully intercepted; (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or (iii) the interception was not made in conformity with the order of authorization or approval." 18 U.S.C. § 2518(10)(a). In Franks, the Supreme Court held that the Fourth Amendment requires an evidentiary hearing to be held at the defendant's request when a "defendant makes a substantial preliminary showing that a false statement . . . was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause . . . ." Franks, 438 U.S. at 155-56. "[A] substantial preliminary showing of intentional or reckless falsity on the part of the affiant must be made in order for the defendant to have a right to an evidentiary hearing on the affiant's veracity." United States v. Brown, 3 F.3d 673, 677 (3d Cir. 1993). To make the preliminary showing required for a Franks hearing, the defendant must show intentional or reckless falsity on the part of the affiant, id., and "cannot rest on mere conclusory allegations . . . but rather must present an offer of proof contradicting the affidavit, including materials such as sworn affidavits or otherwise reliable statements of witnesses." United States v. Yusuf, 461 F.3d 374, 383 n. 8 (3d Cir. 2006).

Mainor has failed to make any such preliminary showing. He offers only conclusory allegations that the wiretap affiant provided inaccurate information, unsupported by any evidence that Yensan either knew that the information was not true or that he recklessly disregarded its falsity.[6] Although the entirety of the conduct described in Yensan's affidavit was not later

---

[6]   I note that many of Mainor's allegations are refuted by the Government's trial evidence. The Government adduced evidence that Mainor was involved in a drug conspiracy, used communications facility in a drug transaction, was the head of a drug organization, and had

charged in the superseding indictment, that does not constitute a preliminary showing that the affiant lacked probable cause to include the allegations in his wiretap affidavit. Also, the inadvertent inclusion of incorrect information does not establish a preliminary showing that the affiant lacked probable cause to believe that a crime had been committed or was about to be committed, if the affidavit otherwise meets the statutory requirements to obtain a wiretap order. Because Mainor's assertions, even if proven, would not have met the criteria contained in 18 U.S.C. § 2518(10)(a) to suppress the contents of a wiretap, and he has not made any preliminary showing that the information provided by the affiant was intentionally or recklessly false, there is no basis to grant an evidentiary hearing, or to conclude that counsel was ineffective.

16.   Failure to challenge the Government's basis for seeking to postpone the notification requirement of 18 U.S.C. § 2518(8)(d).

Lastly, Mainor asserts that counsel was ineffective because he failed to challenge the Government's basis for seeking to postpone the notification required by 18 U.S.C. § 2518(8)(d).[7] He contends that the Government filed its request to postpone notification on June

---

conversations with Michael Burton. (See PSR ¶¶ 13, 15 (referencing phone calls with Rasheed to arrange a drug transaction supporting the "drug conspiracy" and "communications facility" allegation); N.T. 10/18/07 at 80 (Yensan's trial testimony regarding Mainor's conversations with Burton).

[7] The provision states:

Within a reasonable time but not later than ninety days after the filing of an application for an order of approval under section 2518(7)(b) which is denied or the termination of the period of an order or extensions thereof, the issuing or denying judge shall cause to be served, on the persons named in the order or the application, and such other parties to intercepted communications as the judge may determine in his discretion that is in the interest of justice, an inventory which shall include notice of--

(1) the fact of the entry of the order or the application;

(2) the date of the entry and the period of authorized, approved or

12, 2006, but Judge Baylson's order granting the postponement was dated June 9, 2006, three days earlier.  He claims that there can be "no possible explanation for the 'cart being put before the horse' in this instance."  (*Pro se* Add. at 12.)  Appointed counsel, however, notes that Mainor received actual notice of the wiretapping on May 3, 2006, when he received discovery material from the Government.  Thus, assuming some error occurred in the granting of the postponement before the Government's motion was formally docketed, Mainor cannot show he was prejudiced by the sequence.  I find that appointed counsel is correct that this claim is meritless.[8]

On May 24, 2006, the Government filed its Motion to admit the intercepted conversations, noting that it had previously provided copies of transcripts of the relevant conversations to defense counsel, and was, concurrent with the filing of the Motion, providing copies of the recordings themselves.  (See Doc. No. 22 at ¶ 3.)  While it is unclear why the Government also later sought to postpone the Section 2518(8)(d) notice, since Mainor makes no assertion that the Government failed to provide the transcripts and recordings at the earlier date,

---

disapproved interception, or the denial of the application; and

(3) the fact that during the period wire, oral, or electronic communications were or were not intercepted.

The judge, upon the filing of a motion, may in his discretion make available to such person or his counsel for inspection such portions of the intercepted communications, applications and orders as the judge determines to be in the interest of justice.  On an ex parte showing of good cause to a judge of competent jurisdiction the serving of the inventory required by this subsection may be postponed.

18 U.S.C. §  2518(8)(d).

[8]  In addition, it must be noted that Mainor raised on direct appeal the issue of whether the Government's interception violated Section 2518(8)(d)'s notice requirement, resulting in a holding by the Third Circuit that "We find no violation of Title III's notice and inventory requirement."  Mainor, 393 Fed. App'x at 16.

he can demonstrate no prejudice arising from the fact that Judge Baylson's order approving the postponement was docketed prior to the docketing of the Government's request.

## IV.    CONCLUSION

For the reasons stated, I find that all of the ineffective assistance of counsel claims raised by Mainor are meritless and should be dismissed without an evidentiary hearing.  When a district court issues a final order denying a § 2255 motion, the Court must also decide whether to issue or deny a certificate of appealability ("COA").  See 28 U.S.C. §  2255 R. 11(a).  A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  I find that no COA should be issued in this case because Mainor failed to "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).

An appropriate Order follows.