IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| v. | NO. 06-140-1 |
| RAYMOND MAINOR | |

**MEMORANDUM OPINION**

Defendant Raymond Mainor moves for compassionate release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i), in consideration of the dangers posed by the COVID-19 pandemic. For the reasons that follow, Mainor's motion will be denied.

**I.   BACKGROUND**

Mainor is currently serving a 25-year sentence for drug trafficking and related offenses. During a 2006 investigation, federal authorities collected substantial evidence of Mainor distributing large quantities of crack and cocaine to other dealers out of his Philadelphia home. He was apprehended after making a large cocaine purchase from his supplier, and officers recovered 15 kilograms of cocaine in the trunk of his car and another kilo of cocaine in his home, as well as 6.4 grams of crack cocaine and a loaded handgun. In 2007, he was convicted by a jury of possession of five or more kilograms of cocaine, possession of five or more kilograms of cocaine within 1,000 feet of a school, possession of 500 or more grams of cocaine with intent to distribute, possession of five or more grams of crack cocaine with intent to distribute, distribution of cocaine and a related school zone count, possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c), and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). In 2008, he was sentenced to a total of

300 months, or twenty-five years.[1]  Mainor has since served approximately 199 months of his sentence, including credit for good conduct.  He is currently serving his sentence at FCI Loretto.  His anticipated release date is March 31, 2028.

Mainor moved for compassionate release in October 2020, citing to his coronary artery disease, for which he had a quintuple bypass surgery in December of 2019, high blood pressure, and obesity.  The Court denied that motion for failure to exhaust his administrative remedies.  Mainor thereafter requested compassionate release from the warden of FCI Loretto, which was denied on December 10, 2020.  Mainor once again moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) based on his medical conditions, including a recent diagnosis with COVID-19 in December 2020.  Mainor tested positive for COVID-19 on December 9, 2020, but has remained asymptomatic since this diagnosis.  The Government opposes his motion, arguing that he has failed to demonstrate an extraordinary and compelling reason for his release and that the factors set forth in 18 U.S.C. § 3553(a) weigh against his release.

## II. DISCUSSION

The First Step Act's amendments to Section 3582(c) "allow incarcerated defendants to seek compassionate release from a court on their own motion, not just through the Bureau of Prisons."  *United States v. Thorpe*, 2019 WL 6119214, at *1 (C.D. Ill. Nov. 18, 2019); *see* 18 U.S.C. § 3582(c)(1)(A) ("[T]he court, . . . upon motion of the defendant . . . may reduce the term of imprisonment. . . .").  Specifically, provided the defendant has exhausted his administrative remedies, section 3582(c) permits a district court to reduce a defendant's sentence "after considering the factors set forth in section [18 U.S.C.] § 3553(a) to the extent that they are

---

[1] The district court imposed the mandatory minimum sentence of 240 months on the drug counts, a concurrent sentence of 120 months on the Section 922(g) count, and a consecutive 60-month sentence on the Section 924(c) count.

applicable, if it finds that . . . extraordinary and compelling circumstances warrant such a reduction . . . and that such reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Here, Mainor has exhausted his administrative remedies by unsuccessfully seeking compassionate relief from the warden of FCI Loretto, and his motion is therefore ripe for consideration.

### A. Extraordinary and Compelling Medical Condition

According to U.S.S.G. § 1B1.13, which is the Sentencing Commission's policy statement on Section 3582(c)(1)(A), a defendant's medical condition may constitute a basis for release. Section 1B1.13 defines a serious medical condition as "extraordinary and compelling" if it "substantially diminishes [defendant's ability] to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover." *See* U.S.S.G. § 1B1.13 n.1. It is the defendant's burden "to prove extraordinary and compelling reasons exist." *United States v. Adeyemi*, 2020 WL 3642478, at *16 (E.D. Pa. July 6, 2020).

Mainor suffers from several underlying medical conditions that substantially diminish his ability to provide self-care while incarcerated during the COVID-19 pandemic. The most severe of these conditions is Mainor's coronary artery disease. On December 27, 2019, Mainor underwent open heart surgery, requiring a quintuple coronary artery bypass. He was discharged from the hospital on January 2, 2020 in stable condition. As of September 18, 2020, Mainor's medical records indicate that he is recovering well from his surgery and his surgical wound has healed. In addition to his severe heart disease, Mainor has high blood pressure and high cholesterol. Moreover, he qualifies as obese due to his body mass index (BMI) of 33. Finally, his age (fifty-five) and status as a former smoker are both notable in light of his underlying medical conditions. As of October 2020, Mainor was taking aspirin, a statin for cholesterol

control, metropolol (a beta blocker) for high blood pressure, and a medication to prevent fluid retention.

Considering his age and multiplicity of health concerns, in particular his chronic heart disease, high blood pressure, obesity, and status as a smoker, the Court finds that Mainor's condition qualifies as an extraordinary or compelling reason for release during the COVID-19 pandemic. The Center for Disease Control (CDC) has identified heart disease, being a current or former smoker, and obesity as underlying medical conditions that place a person at an increased risk of severe illness in the event of a COVID-19 infection. *See* Center for Disease Control, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Dec. 23, 2020); *see also United States v. Staats*, 2020 WL 6888224, at *2 (E.D. Pa. Nov. 24, 2020) (explaining that research has linked smoking "with substantially higher risk of COVID-19 progression," including one study showing "nearly double the odds of experiencing progression of COVID-19 than non-smokers" (internal quotation marks and citations omitted)). The CDC also suggests that having high blood pressure might increase the risk of severe illness from COVID-19. *Id.* In addition, the CDC has published statistics showing that COVID-19 infected persons in the 50-64-year-old age bracket are four times more likely to be hospitalized and thirty times more likely to die than those in the 18-29-year-old comparison group. *See* Center for Disease Control, *Covid-19 Hospitalization and Death by Age,* https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-age.html (last updated Aug. 18, 2020).

While each one of the Mainor's conditions alone might not be considered extraordinary and compelling, Mainor's medical concerns must be considered in combination. As the CDC logically suggests, "[t]he more underlying medical conditions someone has, the greater their risk

is for severe illness from COVID-19." CDC, *People with Certain Medical Conditions*. Where Mainor is fifty-five years old and suffers from four conditions that the CDC associates with a severe COVID-19 outcome, including a heart condition that caused him to undergo open heart surgery only one year ago, the Court finds that his medical circumstances are "extraordinary and compelling" in light of the COVID-19 pandemic.[2]

## B. Section 3553(a) Factors

Nevertheless, Section 3582(c) permits a district court to reduce a defendant's sentence based on a qualifying medical condition only "after considering the factors set forth in section § 3553(a)[3] to the extent that they are applicable[.]" 18 U.S.C. § 3582(c)(1)(A). In consideration of the relevant factors under Section 3553(a), in particular the seriousness of Mainor's underlying drug trafficking offenses, his successful recovery from his recent COVID-19 infection, and the demonstrated ability of FCI Loretto to treat Mainor's underlying medical

---

[2] The Government acknowledges that, under U.S.S.G. § 1B1.13 n.1, Mainor's obesity and coronary artery disease together present "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility" during the COVID-19 pandemic. Still, the Government argues that Mainor's recovery from COVID-19 mitigates the risk to him, and he therefore presents no "extraordinary and compelling" medical condition warranting relief. While Mainor's previous COVID-19 infection is relevant to the Court's analysis, it is properly addressed under the Section 3553(a) framework, as set forth below.

[3] Section 3553(a) directs a sentencing court to consider, as relevant here:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > (B) to afford adequate deterrence to criminal conduct;
> > (C) to protect the public from further crimes of the defendant; and
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.
>
> . . . (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;

conditions, his request for compassionate release will be denied.

Section 3553(a) directs the court to consider the nature and circumstances of the offense, as well as the need for the sentence to reflect the seriousness of the offense, afford adequate deterrence to criminal conduct, and protect the public from future crimes of the defendant. Mainor was convicted of trafficking large quantities of crack and cocaine. In the span of just a few months, he delivered 15 kilograms of cocaine to one dealer and bought another 15 kilograms from his own supplier. He was apprehended with a loaded handgun, which he was prohibited from having due to his previous convictions. Mainor was given the mandatory minimum sentence of twenty-five years, of which he has served about two-thirds.

A discount of over 30% of his sentence simply would not reflect the seriousness of his conduct, afford adequate deterrence, or protect the public from future crimes of a serial drug trafficker. *See United States v. Goode*, 2020 WL 6445930, at *6 (E.D. Pa. Nov. 2, 2020) (notwithstanding health conditions, release is not warranted with 55 months, or about 25%, remaining on 210-month sentence for career offender who committed drug trafficking offenses). In addition, release before Mainor completes his mandatory minimum sentence conflicts with Section 3553(a)(6)'s admonition "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," namely, those subject to the same mandatory minimum sentence. *See United States v. Goodall*, 2020 WL 4262277, at *4 (D. Md. July 24, 2020) (denying relief where defendant has served 80 months of 156-month term for drug trafficking because a mandatory minimum sentence "is indicative of the seriousness of the offense and ought to be considered when determining whether the goals of punishment and deterrence have been fulfilled.").

Section 3553(a) also directs the court to consider the relevant characteristics of the

defendant and the need to provide medical care in the most effective manner.  Neither of these factors weigh in favor of release.  Prior to his COVID-19 diagnosis, Mainor's medical records indicate that he was healing well from his bypass surgery, reported no pain, and had resumed normal activity.  He was prescribed medication for high blood pressure, high cholesterol, and to prevent fluid retention.  Mainor tested positive for COVID-19 on December 9, 2020.  Fortunately he suffered no medical complications associated with his COVID-19 diagnosis, despite his underlying conditions.  His medical records indicate that he was monitored daily and did not exhibit any symptoms or exacerbation of his underlying medical conditions.  The only treatment apparent in his medical records during his COVID-19 infection is Acetaminophen, or Tylenol.  While there is no record of a negative test since his diagnosis, his medical records indicate that his infection was "resolved" as of December 21, 2020.  The institution has regularly monitored Mainor during the pandemic, including while he was infected, and offered or provided appropriate treatment.[4]  At present, Mainor's medical condition is stable and his underlying conditions are under control, despite his previous COVID-19 infection.  In short, Mainor has received effective medical care at FCI Loretto prior to and during the COVID-19 pandemic.

Moreover, Mainor does not appear to be at a high risk of re-infection at FCI Loretto, which currently only has one inmate infected with COVID-19.  *See* Federal Bureau of Prisons, *COVID-19 Cases*, https://www.bop.gov/coronavirus/.  The Court need not speculate on unresolved scientific questions about the possibility of reinfection.  Suffice to say that, on the record before the Court, there is no reason to believe that Mainor is particularly susceptible to a

---

[4] Mainor has apparently declined blood pressure tests and medication in the past, preferring to treat his hypertension on his own.  Additionally, Mainor briefly underwent a hunger strike in late October 2020 for religious purposes and to obtain relief.  Neither of these decisions indicates that his medical care is inadequate or that he is entitled to relief.

severe outcome from a second COVID-19 infection where he remained asymptomatic during his previous infection, does not claim that he was denied or given inadequate medical treatment related to that infection, and is housed in a facility where there is only one inmate infected with COVID-19 and 715 inmates—the vast majority of the population—who suffered with COVID-19 when there was an outbreak of the disease among the prison's inmates have successfully recovered. *See, e.g., United States v. Wiltshire*, 2020 WL 7263184, at *6 (E.D. Pa. Dec. 9, 2020) ("[T]he risk of reinfection after a prior positive test for COVID-19 is a not basis for compassionate release here. Presently, there is no scientific consensus on the risk of reinfection. . . . . Moreover, this Court is unable to find a case granting compassionate release to a defendant who recovered from COVID-19 and was asymptomatic. To the contrary, the consensus is that such a circumstance does not warrant release."); *United States v. Peuse*, 2020 WL 5076356, at *3 (N.D. Cal. Aug. 24, 2020) (collecting cases showing that courts have consistently denied "compassionate release to a defendant who has recovered or is expected to recover from COVID-19 with no symptoms.").

    For the reasons set forth above, Mainor's motion will be denied.

    An appropriate order follows.

**January 19, 2021**                                                       **BY THE COURT:**

                                                                                */s/ Wendy Beetlestone*
                                                                                **WENDY BEETLESTONE, J.**